FILED
January 21, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0002362099

4

PAUL R. BARTLESON SBN 119273
LAW OFFICES OF PAUL R. BARTLESON
1007 7th Street, Suite 214
Sacramento, CA 95814
Ph. # (916) 447-6640
Fax # (916) 447-7840
paulbartlesonlaw@comcast.net

Attorney for Debtor,
VANG CHANTHAVONG

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
MODESTO DIVISION

-o0o-

| | |
|---|---|
| In re VANG CHANTHAVONG,<br><br>Debtors.<br><br>_____/ | BNK CASE NO. 09-91120-D-7<br><br>MTN. CNTRL. NO. PRB-1<br><br>MOTION TO REOPEN<br><br>[Bnk. Cde. §350 (b) L.R. 5010-1]<br><br>DATE: EX PARTE<br>TIME:<br>DEPT: D, Honorable Robert S. Bardwil |

Debtor herein requests that the above captioned case be reopened for purposes of Determining the Dischargeability of a debt, and declaratory relief, pursuant to Bankruptcy Code 350 (b) and Local Rule 5010-1.

1.  Debtor herein, VANG CHANTHAVONG ("CHANTHAVONG"), is or was at all times relevant the owner of certain real property which is the subject of the action herein, 1900 "H" Street, Sacramento, California (The "subject property.")

2.  On or about August 24, 2007, plaintiff CHANTHAVONG and LEHMAN BROTHERS entered into a loan agreement for the refinancing of the subject property. For valuable consideration, made, executed and delivered a written promissory note.

3.  To secure payment of the principal sum and interest as provided in the note, and

4

as part of the same transaction, plaintiffs executed and delivered to defendant LEHMAN BROTHERS as beneficiary of a deed of trust dated August 23, 2007, by the terms of which plaintiff, as trustor, conveyed to defendant, as Trustee, the real property described above.  On or about August 28, 2007, defendant LEHMAN BROTHERS  caused to be recorded a deed of trust

4. AURORA LOAN SERVICES, INC. ("AURORA") subsequently became the loan servicer for the subject loan.

5. Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS") is, upon information and belief, a California Corporation, licensed to do business and doing business within the State of California, and in the business of "loan servicing" and conducting foreclosure sales by way of private trustee's sale.

6. Defendant CAL WESTERN RECONVEYANCE CORPORATION is a California Corporation and a subsidiary of MERS, doing business within the State of California as a foreclosure trustee.

7. Thereafter, the CHANTHAVONG became in default under the terms of the note, as a result of change in employment.

8. Plaintiff had intended to reside in the house and remodel, but because of a downturn in the economy, was forced to temporarily relocate to Modesto, California.

9. On or about, August 15, 2008, Lender, through MERS, caused to be recorded a Notice of Default (NOD) and election to sell in Book No. __ at page, of the Official Records of the County of Sacramento, State of California, pursuant to Civil Code § 2924 et seq.

10. Prior to the recordation, Lender did not contact plaintiff in an effort to inquire about Plaintiffs' circumstances or discuss the possibility of a loan modification agreement.

11. On or about, October, 2008, the Federal Government passed the Hope for Homeowners Act under the Bush Administration; this act was modified on May 20, 2009 by the OBAMA plan.

12. On or about, 7/11/2008 SB 1137, the State of California passed the "Loan Modification law."

13. On or about January13, 2009, defendant WESTERN STATES caused to be posted a NOTICE OF TRUSTEE'S SALE on the subject property, with a Scheduled sale date of

February 02, 2009, on only 19 days notice.

14. This NOTICE OF TRUSTEE'S SALE does not appear, however, to have ever been recorded.

15. On February 4, 2009, Debtor, through his agent, called the AURORA to discuss a short sale option. She inquired as the status of the property and was told that the property was in foreclosure, but no sale date had been set.

16. On 2/17/09, plaintiff's agent again talked to AURORA and was told that the status of the loan was in foreclosure but no sale date had been set; that the property was in the process of trying to do a short sale and loan modification option.

17 On March 02, 2009, plaintiff's agent again talked to the lender, was told the status of the loan was in foreclosure and that there was a sale date of May12, 2009. I was told that the work out and loan modification agreement had been denied in February.

18. On March 30, 2009, plaintiff's agent again talked to the lender, was told the status of the loan was in foreclosure, sale date set for May 12, 2009. AURORA was advised that plaintiff was trying to acquire more income to qualify.

19. On or about 4/21/09 Plaintiff filed for Bankruptcy Protection under Chapter 7 of the United States Bankruptcy Code, Case #09-91120, Eastern District of California, filed, 4/21/09; the case was discharged on or about 8/14 /09.

24. Prior to, and throughout the Bankruptcy, I had regular contact with AURORA in an attempt to work out a loan modification agreement. My brother's Bankruptcy case closed on or about 8/14/09.

25. On or about 4/23/09, a Notice of Trustee's Sale was recorded in the Official Records of Sacramento County, in violation of the automatic stay of Bankruptcy Code § 362 (a).

26. On May 5, 2009, I contacted AURORA to ask for loan modification option and was told to wait until the Bankruptcy was discharged and then call back to see if my brother could qualify for a loan modification. I was not told that there was a any sale date or that the sale date had been continued.

27. On July 9, 2009, I called AURORA to check on the status of the loan , and was told that the Bankruptcy had not yet been discharged and was under Bankruptcy protection. I was not told

that there was any sale date or the sale had been continued.

28. On August 17, 2009, I called and talked to AURORA, and was told that the bankruptcy was discharged an no longer in Bankruptcy protection. I was told that the property was back in foreclosure but *no sale date had been set*, and the lender put me (my brother) on a loan modification trial period for 3 months effective September 10th, with the first payment due for $3,000.00, and subsequent payments due on the 10th of each month fo $3021.00. I was not told that a sale date had been set or continued.

29. Thereafter, negotiating on behalf of my brother, plaintiff and bank entered into a Loan Modification Agreement, on or about August 18, 2009 (the "Loan Mod Agreement").

30. The Loan Modification Agreement was a "Trial Agreement."

31. The loan modification agreement called for borrowers/owners to make monthly payments in the amount of $3,000.00 to the Lender.

32. On September 7, 2009, she called the lender to make sure that there was no sale date on the property and was told that there was no sale date scheduled.

33. On or about 9/11/09, a Notice of Trustee's sale was recorded in the Official Records of Sacramento County.

34. This notice of sale was/was not posted on the property, in violation of Civil Code §2924 et seq.

35. Debtor made the first payment under the agreement on September 17, 2009.

36. Debtor's agent called and told AURORA Loan Services and told them that the payment would be late and they told me that it would be fine.

37. AURORA subsequently received the payment and applied it to the account.

38. On September 24, 2009, debtor's agent again called the lender to make sure that the property was not in foreclosure because of the payment plan and make sure that there was no sale date, and to confirm that the payment wad received. She was told that the payment had been received and credited to the account on September 24, 2009.

39. On October 19, 2009 Debtor's agent called AURORA to tell them that the payment for October was being sent via priority mail. Debtor's agent was not told that there was any sale

date.

40. On or about October 30, 2009, defendants conducted a private foreclosure sale without notice to plaintiff or his agent of any default in the loan modification agreement.

41. On or about November 3rd, 2009, residents of the property were visited by a real estate agent and advised that advised that the property was "for sale."

42. Debtors and his subtenants have been served with a 60 day notice to quit and an unlawful detainer complaint, and are facing eviction from the premises.

43. Debtor is informed and believes, and thereon alleges, that the security interest in the subject property was discharged in the Chapter 7 case in that LEHMAN BROTHERS never had possession of the note.

44. Further, at all times, defendants had no authority to conduct the foreclosure sale as they were not the real party in interest.

45. Debtor requests that this Bankruptcy Case be reopened for purposes of determining the dischargeability of debt and whether defendants are violating the automatic stay and discharge order by conducting a foreclosure sale without authority, ane to accord such other and further relief..

WHEREFORE DEBTOR respectfully prays for an ORDER REOPENING BANKRUPTCY CASE.

DATED: January 20, 2010        LAW OFFICES OF PAUL R. BARTLESON

By /S/ Paul R. Bartleson
PAUL R. BARTLESON #119273
Attorney for Debtor, VANG CHANTHAVONG